**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————
BRETT ROBERTS                                   :
                                                :
              Plaintiff,                        :
                                                : Civ. Action No.: 12-4763(FLW)
v.                                              :
                                                :
CHIEF EDWARD ZIOLKOWSKI, Individually and in:              **OPINION**
his official capacity, DELAWARE TOWNSHIP        :
POLICE DEPARTMENT, TOWNSHIP OF                  :
DELAWARE, DETECTIVE ROBIN MORANTE,             :
Individually and in her official capacity, ASSISTANT :
PROSECUTOR DAWN SOLARI, Individually and      :
In her official capacity, ACTING HUNTERTDON    :
COUNTY PROSECUTOR DERMOT O'GRADY,             :
Individually and in his official capacity, DETECTIVE :
SERGEANT KRISTEN LARSEN, Individually and in :
her official capacity, LIEUTENANT KATHLEEN      :
SHIVE, Individually and in her official capacity, :
ASSISTANT PROSECUTOR CHRISTINE OLEXA,         :
Individually and in her official capacity,        :
HUNTERDON COUNTY PROSECUTOR'S                :
OFFICE, COUNTY OF HUNTERDON, JANE DOE        :
1-10, Individually and, if applicable, in their official :
Capacity (Fictitious Names), JOHN DOE 1-10,     :
Individually and, if applicable, in their official capacity :
(Fictitious Names),                             :
                                                :
              Defendants.                       :
———————————————————————  :

**WOLFSON, United States District Judge**:

Presently before the Court is a motion for summary judgment filed by defendants,

County of Hunterdon, the Hunterdon County Prosecutor's Office, Hunterdon County

Prosecutor Anthony Kearns III, former Acting Hunterdon County Prosecutor Dermot

O'Grady, Hunterdon County Assistant Prosecutor Dawn Solari, Hunterdon County

Assistant Prosecutor Christine Olexa, Sergeant Kristen Larsen, Detective Robin Morante,

and Lieutenant Kathleen Shive (collectively, the "Moving Defendants"). The instant case arises out of the arrest and prosecution of *pro se* plaintiff Brett Roberts ("Plaintiff") for alleged threats made to his neighbor's daughter. Plaintiff filed his Complaint against multiple defendants, including the Moving Defendants, asserting, *inter alia*, common law claims of false arrest and malicious prosecution, violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq., and violations of 42 U.S.C. § 1983. After carefully considering the submissions of the parties, the Court **GRANTS** the Moving Defendants' motion for summary judgment.

## BACKGROUND AND PROCEDURAL HISTORY

For the sake of brevity, the Court incorporates the facts recounted in its previous Opinion. See Opinion dated May 3, 2013. In short, this action stems from a property dispute between Plaintiff and the Herdman family. Since 2000, the parties have engaged in numerous, often heated disputes concerning an easement across the Herdman's property, which Plaintiff uses to access his home. On June 12, 2010, an incident occurred between Plaintiff and Mrs. Herdman while Plaintiff walked down the easement to his mailbox. According to Plaintiff, Mrs. Herdman yelled at Plaintiff, and he retorted. The two engaged in a back-and-forth, which attracted the attention of a neighbor, Daniel Horner ("Horner"), who purportedly witnessed the altercation. Shortly after the incident transpired, Mrs. Herdman called the police claiming that Plaintiff threatened to kill her young daughter ("A.H.") with a hammer.

In response to Mrs. Herdman's phone call, Chief Ziolkowski was sent to investigate. While no hammer was found, he interviewed Mrs. Herdman, A.H., and Horner. Significantly, Horner corroborated Mrs. Herdman's and A.H.'s claim that

Plaintiff threatened to kill A.H. At the scene, Plaintiff allegedly pointed to a surveillance camera mounted on the back of the Herdman's residence. He told Chief Ziolkowski that the footage on the surveillance camera would exonerate him of any alleged criminal behavior. Plaintiff maintains that Chief Ziolkowski made no attempt to secure the surveillance video. As a result of the investigation, Chief Ziolkowski prepared an Affidavit of Probable Cause, which included the witness statements, but it omitted any reference to the surveillance video. Deeming the information sufficient, the Honorable Judge Petronko, J.S.C. issued an arrest warrant for Plaintiff.

Subsequently, the Hunterdon County Prosecutor's Office charged Plaintiff with, *inter alia*, two counts of petty disorderly persons harassment, which were remanded to the Municipal Court for resolution. In those proceedings, Plaintiff was found guilty of harassment under N.J.S.A. 2C:33-4(a), because he used profanity in the presence of the Herdman's daughter, who is a minor. However, the court further concluded that there was insufficient evidence to convict Plaintiff under N.J.S.A. 2C:33-4(b), brandishing a hammer in a threatening manner.

Prior to the instant motion, this Court dismissed all of Plaintiff's claims against the Delaware Township Police Department, Delaware Township, and Chief Edward Ziolkowski. See Opinion dated May 3, 2013. As to these defendants, the Court dismissed Plaintiff's state law tort claims for failure to adhere to the notice provision of the New Jersey Tort Claims Act ("TCA"). As to Plaintiff's state and federal civil rights claim against Chief Ziolkowski, the Court concluded that Chief Ziolkowski was entitled to qualified immunity because there was probable cause for Plaintiff's arrest. As to the

Township and the Police Department, the Court further concluded that Plaintiff had failed to properly allege a <u>Monell</u> claim against those public entities.

## DISCUSSION

### I.      Standard of Review

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>See</u> <u>id.</u> at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.' " <u>Id.</u> at 324. Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. <u>Id.</u> at 324; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994). The non-moving party must "do more than simply show that there is some metaphysical

doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. A mere "scintilla of evidence ... will be insufficient." <u>Anderson</u>, 477 U.S. at 252.

Before the issues in the instant motion are reached, this Court notes that in Plaintiff's Opposition Brief, he states: "I also chose not to attempt to respond to the Defendants' Brief in Support of Motion for Summary Judgment." Pl.'s Br. at p. 3. Although Plaintiff does not advance any formal legal arguments, he generally contends that the Moving Defendants engaged in an allegedly "willfully negligent" investigation and prosecution because the Moving Defendants "omit[ted] and suppress[ed] the existence of the Herdman's surveillance system," which Plaintiff claims would have resulted in the warrant not being signed.  <u>See</u> Pl.'s Br. at p. 10.

## II.     State Law Claims

As to Counts I and II, Plaintiff asserts state law tort claims of false arrest[1] and malicious prosecution[2], respectively. Since the TCA governs state law claims against public entities and employees, Plaintiff was required to file a Notice of Claim within ninety days of accrual of such claims. <u>See</u> N.J.S.A. 59:1-1 <u>et</u> <u>seq.</u>; and, N.J.S.A. 59:8-8-9. In the Opinion dated May 3, 2013, this Court found, "To this date, Roberts has not filed a

---

[1]     Under New Jersey law, "[a] basis for a suit for false arrest arises where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to process that is void." <u>Mesgleski v. Oraboni</u>, 330 N.J. Super. 10, 24 (N.J. Super. Ct. App. Div. 2000). "A plaintiff need not prove the lack of probable cause, but the existence of probable cause will nevertheless defeat the action." <u>Id.</u> at 24-25.

[2]     Under New Jersey law, malicious prosecution requires a plaintiff to prove: "(1) a criminal action was instituted by this defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." <u>LoBiondo v. Schwartz</u>, 199 N.J. 62, 90 (2009).  Although the elements are distinct, "each element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." <u>Id.</u>

tort claim notice… nor has he alleged, here, any extraordinary circumstances in connection with his failure to do so." In his Opposition, Plaintiff now claims, for the first time, that he submitted a Notice of Claim as to the Moving Defendants on September 23, 2011. However, other than Plaintiff's assertion, he has not supplied this Court with any evidence to corroborate his claim. Indeed, he did not submit the actual notice. On that basis, the Court can dismiss his state law claims. However, even accepting his assertion as true, Plaintiff's claims for false arrest and malicious prosecution still fail on the merits.

In the inquiry regarding Plaintiff's false arrest and malicious prosecution claims, a central question is whether probable cause existed. "Probable cause is a matter of law to be determined by the court, and it is only submitted to the jury if the facts giving rise to probable cause are themselves in dispute." LoBiondo v. Schwartz, 199 N.J. 62, 93 (2009). Probable cause exists if at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citation omitted).

As previously determined by this Court, sufficient evidence existed to establish probable cause for the arrest and prosecution of Plaintiff. See Opinion dated May 3, 2013. In the instant matter, the previous reasoning remains the same. Plaintiff's arrest warrant recounts the statements of A.H., the victim of the alleged crime, and Horner, an eyewitness, who both told Chief Ziolkowski that Plaintiff threatened to kill A.H. with a hammer. In addition, Mrs. Herdman informed the investigators that A.H. ran back into the house hysterically crying and told her that Plaintiff threatened her verbally and

physically with a hammer. The combination of these witness' statements supports the reasonable belief that Plaintiff had threatened A.H., which gave rise to probable cause. "Because probable cause is an absolute defense to an allegation of malicious prosecution or false arrest," Plaintiff's claims against the Moving Defendants for false arrest and malicious prosecution must fail. See Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (2007).

### III.    Civil Rights Claims

As to Counts III and IV, Plaintiff alleges that the Moving Defendants violated his civil rights under the New Jersey Civil Rights Act ("CRA"), N.J.S.A 10:6-1 et seq., and 42 U.S.C. § 1983. In order to analyze these claims, the Moving Defendants must be separated into two groups: first, the prosecutorial defendants: the Hunterdon County Prosecutor's Office, Hunterdon County Prosecutor Anthony Kearns III, Assistant Prosecutor Christine Olexa, Assistant Prosecutor Dawn Solari, and Acting Hunterdon County Prosecutor Dermot O'Grady (collectively, "Prosecutorial Defendants"); second, the investigatory defendants: Detective Robin Morante, Detective Sergeant Kristen Larsen, and Detective Lieutenant Kathleen Shive (collectively, "Investigatory Defendants").

The Prosecutorial Defendants argue that they are entitled to absolute immunity, and thus, they are entitled to summary judgment as a matter of law. In response, Plaintiff contends that the Prosecutorial Defendants, specifically Assistant Prosecutor Dawn Solari, should have discovered the surveillance video before pursing criminal charges, which Plaintiff claims would have resulted in exoneration. The Supreme Court has held that prosecutors are absolutely immune from § 1983 liability for acts that are "intimately

associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). In that connection, the same § 1983 absolute immunity applies in the context of the CRA. See Owens v. Feigin, 194 N.J. 607, 612 (2008). Specifically, the Third Circuit has stated:

> Prosecutors enjoy absolute immunity for the decision to initiate a prosecution, for evaluation of evidence collected by investigators, and even for failure to conduct adequate investigation before filing charges.

Fuchs v. Mercer County, 260 Fed. App'x 472, 475 (3d Cir. 2008) (internal citations omitted). Here, Plaintiff's sole basis for asserting these claims against the Prosecutorial Defendants is his allegation that they failed to conduct an adequate investigation prior to filing charges.[3] Because they are entitled to absolute immunity based on their investigative techniques and decisions, Plaintiff's §1983 and CRA claims against the Prosecutorial Defendants cannot succeed. In addition, the Hunterdon County Prosecutor's Office is a governmental entity, and thus, it is entitled to absolute immunity under the Eleventh Amendment. See Coley v. County of Essex, 462 Fed. App'x 157, 161 (3d Cir. 2011); Beightler v. Office of Essex County Prosecutor, 342 Fed. App'x 829, 832 (3d Cir. 2009).

Likewise, the Investigatory Defendants argue that they are entitled to qualified immunity, and thus, they are entitled to summary judgment as a matter of law. While Plaintiff does not directly respond to this argument, he generally contends that the Investigatory Defendants lacked probable cause for arrest, ignored exculpatory evidence,

---

[3]     In Kamp v. Goldstein, the Supreme Court explained that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when the prosecutor acts as a complaining witness in support of a warrant application." 555 U.S. 335, 343 (2009). Here, Plaintiff has not alleged, let alone proven, any of these circumstances.

and failed to conduct a sufficient investigation. Because the Court finds that the Investigatory Defendants are entitled to qualified immunity, Plaintiff's § 1983 and CRA claims are addressed in tandem. See Ramos v. Flowers, 429 N.J. Super. 13, 22-24 (App. Div. 2012) (holding the defense of qualified immunity is available under the CRA and the standards governing the defense are the same as in actions brought under § 1983); Williams v. State Div. of Police, No. 10-3478, 2012 U.S. Dist. LEXIS 72457, at *48 (D.N.J. May 24, 2012) (finding that "the defense of qualified immunity is appropriate to claims arising under the NJCRA, based on the history of NJCRA and the Court's prior decisions applying the defense as an extension of a § 1983 analysis").

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). To forfeit qualified immunity, a police office must violate "clearly established statutory or constitutional right of which a reasonable person would have known." Kelly v. Borough of Carlisle, 544 Fed. App'x 129, 133-34 (3d Cir. 2013) (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)). Consequently, the qualified immunity standard is one of "objective legal reasonableness." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The protection of qualified immunity exists "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted).

To determine whether a police officer is entitled to qualified immunity, a court must first look to whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was "clearly established." See Kelly, 544 Fed.

App'x at 134 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001)). According to the Third Circuit, "[s]ummary judgment is appropriate if no reasonable juror could conclude that [plaintiff's] clearly established rights were violated." <u>Wilson v. Russo</u>, 212 F.3d 781, 786 (3d Cir. 2000).

Plaintiff does not specify what type of constitutional claims are asserted against the Investigatory Defendants. To the extent that Plaintiff asserts a false arrest claim against these Investigatory Defendants, the claim must fail. In a § 1983 action, Plaintiff may succeed on a false arrest made pursuant to a warrant if Plaintiff shows by a preponderance of the evidence "(1) that the police 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' " <u>Wilson</u>, 212 F.3d at 786-87. An omission is made with reckless disregard for the truth if "an officer recklessly omits facts that any reasonable person would know that a judge would want to know." <u>Id.</u> at 783. However, an officer is not required to relate "the entire history of events leading up to a warrant application with every potentially evocative detail." <u>Id.</u> at 787. Further, to determine whether the omission was material, a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." <u>Id.</u> at 789.

With that said, Plaintiff claims that the Investigatory Defendants intentionally omitted the video surveillance, which Plaintiff claims would have either exonerated him or prevented the warrant from being issued. Assuming that the surveillance video was recklessly omitted, the next question is whether the omission was material. This Court

concludes that the omission is not material. With respect to probable cause, as stated above, the Court has concluded that there was probable cause to arrest Plaintiff based on the testimony of multiple witnesses, including A.H. See Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1993) (reasoning that "when a police officer has received a reliable identification by a victim… the police have probable cause"). In contrast to the testimony of multiple witnesses, the tape serves little, if any, exculpatory value – the video does not contain audio recording or footage of the victim. Therefore, the tape is not probative of whether Plaintiff verbally and physically threatened A.H., the victim. Because Plaintiff cannot prove that the omission of the video is material, the Court finds that Plaintiff has failed to show that the Investigatory Defendants violated his constitutional right under § 1983 or the CRA.

Finally, to the extent Plaintiff asserts a Monell claim against the County of Hunterdon or the Hunterdon County Prosecutor's Office, that claim must fail. A governmental entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978); see Natale v. Camden County Correctional Facility, 318 F.3d 575, 583 (3d Cir. 2003). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Here, Plaintiff does not identify a custom or policy, "specify what exactly that custom or policy was," McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009), or assert facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Jiminez v. All

Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)). Plaintiff's failure to identify a custom or policy is fatal to his Monell claim. In addition, this Court has found that the Prosecutorial Defendants and Investigatory Defendants did not violate Plaintiff's constitutional rights. Without an underlying constitutional wrong, Plaintiff's Monell claim fails.

## CONCLUSION

In conclusion, the Court finds that Plaintiff cannot succeed on his claims against the Moving Defendants as a matter of law. As to Counts I and II, Plaintiff's state law claims for false arrest and malicious prosecution fail because the Moving Defendants have established probable cause. As to Counts III and IV, the Prosecutorial Defendants are entitled to absolute immunity. Similarly, the Investigatory Defendants are entitled to qualified immunity on those claims. Finally, Plaintiff's Monell claim against the County of Hunterdon and the Hunterdon County Prosecutor's Office also fails. Accordingly, the Court **GRANTS** the Moving Defendants' motion for summary judgment in its entirety.


**DATED:** September 17, 2014                    /s/ Freda L. Wolfson
                                                Freda L. Wolfson
                                                United States District Judge

12